IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TRUBIE LAMBERT, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:14cv00179 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Trubie Lambert, Jr. ("Lambert") challenges the decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled prior to October 16, 2012 and therefore not eligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). See 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Lambert alleges that the Administrative Law Judge ("ALJ") erred by improperly evaluating his mental impairments and failing to analyze the cumulative effect of his medical impairments prior to October 16, 2012. I find that substantial evidence supports the ALJ's decision in all respects. Accordingly, I **DENY** Lambert's Motion for Summary Judgment (Dkt. No. 18), and **GRANT** the Commissioner's Motion for Summary Judgment. Dkt. No. 16.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Lambert failed to demonstrate that he was disabled under

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

1

the Act.[2]  See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted).  The final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Lambert protectively filed for DIB on January 3, 2011 and SSI on July 26, 2011, claiming that his disability began on February 2, 2010.  R. 90–96, 449–54.  The Commissioner denied Lambert's applications at the initial and reconsideration levels of administrative review.  R. 25–37, 38–50, 455–64.  On April 1, 2013, ALJ Anne V. Sprague held a hearing to consider Lambert's disability claim.  R. 473–97.  Lambert was represented by an attorney at the hearing, which included testimony from Lambert and vocational expert Robert Jackson.  Id.

On April 9, 2013, the ALJ entered her decision analyzing Lambert's claim under the familiar five-step process[3] and denying Lambert's claim for benefits.  R. 11–24.  The ALJ found

---

[2] The Act deems a person disabled for SSI purposes "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work.  Rather, a claimant must show that her impairments prevent him from engaging in all forms of substantial gainful employment given her age, education, and work experience.  See 42 U.S.C. § 1382c(a)(3)(B).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether he can perform other work.  Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A).  See Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

that Lambert suffered from fibromyalgia, carpal tunnel syndrome, cervical radiculopathy, osteoarthritis, depressive disorder, and anxiety disorder. R. 14–15. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 15–16. The ALJ further found that Lambert retained the RFC to perform light work,[4] except:

> [Lambert] can only occasionally reach overhead with the bilateral upper extremities. He is limited to pushing and pulling bilaterally with his bilateral upper extremities to 10 pounds frequently and 20 pounds occasionally. He can never climb ladders, ropes, and scaffolds. He can occasionally crawl, and he can frequently kneel, crouch, stoop, balance, or climb ramps and stairs. He is limited to simple, routine, repetitive tasks with no more than occasional social interaction.

R. 16. The ALJ determined that jobs existed in significant numbers in the national economy prior to October 16, 2012, such as packer and inspector. R. 22–23. The ALJ determined that no jobs existed in significant numbers in the national economy beginning on October 16, 2012 due to the change in Lambert's age category to an individual of advanced age. R. 24. Thus, the ALJ concluded that Lambert became disabled on October 16, 2012. R. 24. On February 27, 2014, the Appeals Council denied Lambert's request for review (R. 4–7), and this appeal followed.

## ANALYSIS

Lambert argues that the ALJ gave no consideration to his mental impairments and that he improperly analyzed the cumulative effect of his impairments. For the reasons that follow, I find that Lambert's arguments have no merit.

---

[4] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by him and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

## Mental Impairments

Lambert challenges the ALJ's review of his mental impairments for the time period of February 2, 2010 through October 15, 2012. Lambert contends that the ALJ gave no consideration to his mental health impairments and improperly concluded that his mental impairments were not severe because of his conservative treatment. The ALJ in fact determined Lambert suffered from severe depressive disorder and anxiety disorder. R. 14–15. The court instead construes Lambert's argument as contending that the RFC for his mental impairments is not supported by substantial evidence.

The Commissioner's regulations provide a framework for evaluating mental impairments, and the ALJ employed that framework in this case. Specifically,

> [i]n evaluating mental impairments, the ALJ employs a specific technique that considers four functional areas essential to the ability to work: activities of daily living; ability to maintain social functioning; concentration, persistence, and pace in performing activities; and deterioration or decompensation in work or work-like settings (Psychiatric Review Technique "PRT" findings). 20 C.F.R. §§ 404.1520a, 416.920a (2011). The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4) (2011).

Felton–Miller v. Astrue, 459 F. App'x 226, 231 (4th Cir. Dec. 21, 2011) (unpublished). The ALJ must account for any such limitations in the RFC. See generally Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015).

In this case, the ALJ addressed each of the four functional areas and expressly found that Lambert has only mild limitation in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. R. 15. The ALJ reviewed all four of these functional areas

4

within the context of Lambert's depression and anxiety, which she determined to be severe in nature. R. 16. Moreover, the ALJ specifically reviewed Lambert's mental health evidence before and after the date of disability in October 2012. R. 17–20. The ALJ reviewed Lambert's complaints of depression and anxiety to Ms. Martin multiple times from 2010 through 2012, and noted his hospitalization for psychiatric symptoms and counseling at Mount Rogers. Id.

Lambert does not specify how the ALJ failed to consider his mental impairments, but it is not obvious in the court's review; the ALJ appears to have thoroughly reviewed the records both before and after the date of disability and provided explanation for how these records factored into her conclusions. See Taylor v. Astrue, No. CIV.A. BPG-11-0032, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012) (finding ALJ met obligations of SSR 98-6p where ALJ provided a narrative of the evidence on file and explained why the evidence was not compelling). To the extent Lambert contends that the ALJ did not consider his mental health evidence prior to the determined date of disability, the ALJ explicitly considered evidence prior to October 2012 and was required to do so given Lambert's continuing symptoms of mental health. See, e.g., McGinnis v. Astrue, 709 F. Supp. 2d 468, 473 (W.D. Va. 2010) (remanding a denied claim to review additional records because the claimant's severe depression and intellectual difficulties likely did not change within the few months after the ALJ's decision). The ALJ considered Lambert's mental health evidence.

Moreover, substantial evidence supports the ALJ's decision. Lambert's mental health record is relatively minimal compared to his physical record. Lambert denied depression during an appointment in November 2008 (R. 179) and did not mention any psychological symptoms in medical appointments in 2006 and 2008. R. 181–90. Rollin Hawley, M.D. noted Lambert looked depressed during a neurological consultation appointment on April 7, 2009. R. 191.

5

During an August 16, 2010 appointment for shoulder pain, primary care provider Mary A. Martin, ANP diagnosed Lambert with depression based on reports of mood changes, anger, and sleeping problems. R. 243. On November 1, 2010, Lambert reported he felt more depressed to Ms. Martin and that he continued to have irritability. R. 232. On February 7, 2011, Lambert reported to Ms. Martin that medication helped his depression, but that he still felt anxious and angered easily; Ms. Martin recommended anger management and anxiety counseling. R. 223–24. At a May 23, 2011 appointment with Ms. Martin, Lambert reported anxiety, mood changes, and temper; he felt one of his medications was not working and denied suicidal or homicidal thoughts. R. 214.

Licensed Clinical Psychologist Angelia Berry, Psy.D. performed a consultative examination of Lambert on May 27, 2011. R. 251–55. Lambert's mental status examination showed largely normal results, with logical and coherent thought content and grossly intact short- and long-term memory. R. 253–54. Dr. Berry diagnosed Lambert with moderate major depressive disorder and generalized anxiety disorder. R. 254. For his functional assessment, Dr. Berry wrote:

> It is likely that he is capable of understanding directions, including simple and more detailed and complex directions. Memory of complex instructions may be mildly impaired due to deficits in working memory. He may experience mild to moderate deficits interacting appropriately with others due to symptoms of anxiety. He is likely capable of making work-related decisions and engaging in complex problem solving and decision-making tasks. His ability to cope effectively with daily stressors is likely to be moderately impaired.

R. 255. She gave the opinion that Lambert would likely benefit from psychiatric medication management and outpatient counseling services. Id.

State agency consultant Linda Dougherty, Ph.D. reviewed Lambert's records on June 14, 2011. R. 32–34. She found moderate limitations in understanding, remembering, and carrying out detailed instructions; working in coordination with or in proximity to others without being distracted; and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. R. 32–33. Dr. Dougherty also noted moderate limitations in accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and traveling to unfamiliar places or using public transportation. R. 33–34.

On September 22, 2011, Andrew Bockner, M.D., reviewed Lambert's records and determined Lambert faced moderate limitations in understanding, remembering, and carrying out detailed instructions, but that he could understand and remember simple one-to-two step directions. R. 45–46. Dr. Bockner noted a moderate limitation in maintaining attention and concentration for extended periods, working in coordination with or in proximity to others without being distracted by them, completing a normal workday and workweek without interruptions from psychological symptoms and performing at a consistent pace without an unreasonable number of rest periods. R. 46. Dr. Bockner clarified that Lambert's ability to cope with daily stressors was moderately impaired, but that he could work for at least two hours at a time between breaks and could concentrate and persist at simple tasks. R. 46. Dr. Bockner also noted moderate limitations in interacting appropriately with the general public, with supervisors, and with coworkers or peers due to pain, anxiety, and depression, but determined Lambert could ask simple questions, request assistance, and work at simple tasks in an environment that did not require frequent collaboration and communication with others. R. 47.

Ms. Martin met with Lambert on September 26, 2011 for a checkup; Lambert reported that medication helped his depression and that he continued to have anxiety. R. 370–73. Lambert received an initial assessment for short-term counseling services at Mount Rogers Community Services Board on October 10, 2011, where he received diagnoses of major depressive disorder, dysthymia, and alcohol abuse in remission and listed concerns of social problems, substance related problems, serious mental illness, and occupational/work problems, among others. R. 256–64. Lambert complained of panic attacks and anxiety in January and May 2012. R. 362–63, 367.

Lambert was admitted to New River Valley Medical Center under a temporary detention order for threat of suicide on July 19, 2012, where he reported depression due to chronic pain, anxiety disorder, auditory hallucinations, and some OCD tendencies. R. 348–53. Shelly McIntrye, M.D. treated Lambert and expressed concern about possible bipolar disorder; she discharged him on July 23, 2012 with diagnoses of severe major depressive disorder, obsessive-compulsive disorder, and personality disorder. R. 348. On July 24 and August 21, 2012, Lambert received assessments and counseling at Mount Rogers; after discussing his decompensation and resulting hospitalization because he could not afford depression medication, Lambert reported feeling better with no suicidal or homicidal ideation and presented normal mental status examinations. R. 265–73. On September 24, 2012, Lambert received a checkup from Ms. Martin and stated he had not taken medications for several months, which caused him to be unable to sleep; he reported adjusting and feeling better after following-up at Mt. Rogers and taking medication. R. 384–85. On March 18, 2013, Ms. Martin completed a clinical assessment of pain for Lambert and noted that his medication severely limited his effectiveness in the workplace due to distraction, inattention, or drowsiness. R. 400. Lambert received

counseling at Mt. Rogers on March 19, 2013, noting Lambert's depression, agitation, hopelessness, insomnia, memory lapses, and feelings of suicidal ideation and violent thoughts. R. 411–42. A temporary detention order again was placed on Lambert on March 21, 2013 after reports of violent thoughts, with an expected stay of three to five days and a recommendation of follow-up with his primary care provider. R. 444–48.

Lambert's testimony and self-reports generally focus on his physical pain rather than his mental health challenges. At the hearing before the ALJ, Lambert testified that he cannot concentrate or pay attention sufficiently to operate a cash register, experiences panic attacks two to three times per week, and that he separated from his wife due to mood swings. R. 490–92. He reported in his disability application that he attended special education classes in high school. R. 118. Lambert wrote in his function report that he cannot follow spoken instructions due to his memory, has challenges paying attention for long, does not handle stress well, does not handle changes in his routine well, and faces panic attacks. R. 141–42. In his disability report on appeal, Lambert reported his memory was getting worse and he had "bad anxiety attacks." R. 165. In March 2013, Lambert reported that his physicians were growing concerned about his depression and his daily panic attacks. R. 174.

While it is clear that Lambert is impaired to some degree in his mental functioning, substantial evidence supports the RFC. None of the mental health opinions in the record recommended more severe limitations than those included in the RFC. Lambert's depression and anxiety generally appear to be controlled by medication, his hospitalizations were not extensive in nature and generally remedied by a return to medication, and he only recently began counseling services. Lambert's treatment has been conservative in nature and is not as severe as one would expect for someone with disabling mental health impairments. Unlike Lambert's

assertion, the ALJ found Lambert's depression and anxiety to be severe in nature but not as severe as he attested to in his testimony and self-reports. Ultimately, the ALJ considered the record and accounted for the effects of Lambert's depression and anxiety by limiting his RFC to simple, routine, repetitive tasks with no more than occasional social interaction.[5] R. 16. Therefore, the court finds that substantial evidence supports the ALJ's assessment of Lambert's mental impairments.[6]

## Combined Effect of Impairments

Lambert also asserts that the ALJ failed to evaluate the cumulative effect of his chronic pain and mental impairments as required by the regulations. Specifically, Lambert highlights that the ALJ did not take into account that a person with Lambert's characteristics would miss at least two days per month of work and that the vocational expert testified that this would not permit him to maintain competitive employment.

Where a claimant has multiple impairments, the ALJ must consider the combined effect of those impairments in determining whether the claimant is disabled. See 20 C.F.R. § 404.1523; Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [a] claimant unable to engage in substantial gainful

---

[5] Lambert did not specifically contest his RFC as it relates to his moderate limitation in concentration, persistence, or pace, thereby waiving any challenge raised under Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Regardless, the ALJ closely employed the medical sources' recommended limitations in the RFC and substantial evidence supports the RFC in its entirety.

[6] As a corollary to his main argument about consideration of his mental health impairments, Lambert argues that the ALJ's hypothetical question to the vocational expert was improper because it "did not contain all of the facts." Dkt. No. 19, p. 8–9. Lambert does not specify the facts omitted from the hypothetical, but notes disagreements with the ALJ's choice not to accept opinions regarding absences or frequency of breaks, as well as Dr. McIntyre's recognition of Lambert's "serious problems." Dkt. No. 19, p. 9. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (quoting Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)). As I have found that the ALJ properly reviewed Lambert's mental impairments, it logically follows that any additional mental restrictions are not supported by the record, and are therefore, not relevant to the RFC as given to the vocational expert at the hearing.

activity." Id. at 50. In addition to "not fragmentiz[ing]" the effect of the claimant's impairments, "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Id. at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)). "[A]n ALJ need not explicitly state that he or she has considered a claimant's impairments in combination. What matters is whether it is discernible from the ALJ's decision that he or she did so." Jones v. Astrue, Civ. Action No. 7:10cv00313, 2011 WL 1877677, at *12 (W.D. Va. May 17, 2011).

Here, the ALJ found that Lambert suffered from both mental and physical severe impairments. R. 16–22. The ALJ's opinion reflects that she thoroughly considered all of the evidence relating to Lambert's physical and mental impairments when developing the RFC, and as discussed above, substantial evidence supports her review. Although Lambert points to the vocational expert's testimony about two absences from work, Lambert does not point to anywhere in the record supporting such absences. None of the medical opinions recommend increased absences or any additional restrictions. Only Dr. Bockner recommended a need for breaks throughout the workday, but he did not appear to suggest anything more than employer-provided breaks. The court has not found evidence supporting multiple days of absence or any other restrictions that are not already included in the RFC. Therefore, I find that the ALJ did not fail to analyze the combined effect of Lambert's medical impairments.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment is **GRANTED** and Lambert's motion for summary judgment is **DENIED**.

Enter: September 29, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge